# 1. STATE DOCKET SHEET

**201985326 - XIE, KEPING (M D) (PHD) vs. UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER (Court 113)**

Chronological History *(non-financial)*   Print All

| Summary | Appeals | Cost Statements | Transfers | Post Trial Writs | Abstracts | Parties |
| Court Costs | Judgments/Events | Settings | Services/Notices | Court Registry | Child Support | Images |

**Purchase Order** ( 0 documents )

**Print List**

* **Note:** Only non-confidential public civil/criminal documents are available to the Public. All non-confidential Civil documents are imaged. In Criminal Cases, select non-confidential documents are available in electronic format (not every document is available for electronic viewing and a document may be filed in the case that is not viewable electronically). If the case or Civil document you are looking for is not available and should be, please click here to notify Customer Service.

If you are not a litigant in this case, you may visit our Customer Service departments to obtain copies of documents. Confidential or Sealed documents may not be dispensed to public customers.

If you are a litigant that is a party of this case and would like access to the restricted documents, please click here.

| Image No. | Type | Title | [Reset Sort] | Post Jdgm | Date | Pages | Add Entire Case |
|-----------|------|-------|--------------|-----------|------|-------|-----------------|
| 88545065 | Filing | Citation | | | 12/12/2019 | 2 | Add to Basket |
| 88545066 | Filing | Citation | | | 12/12/2019 | 2 | Add to Basket |
| 88312730 | Filing | Plaintiff's Original Petition and Request for Disclosure | | | 11/27/2019 | 35 | Add to Basket |

[WS6]

**HCDistrictclerk.com**     XIE, KEPING (M D) (PHD) vs. UNIVERSITY OF TEXAS     12/23/2019
M D ANDERSON CANCER CENTER
Cause: 201985326     CDI: 7     Court: 113

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## SETTINGS
No Settings found.

## NOTICES
No Notices found.

## SUMMARY

### CASE DETAILS

| | | | |
|---|---|---|---|
| **File Date** | 11/27/2019 | | |
| **Case (Cause) Location** | | | |
| **Case (Cause) Status** | Active - Civil | | |
| **Case (Cause) Type** | OTHER CIVIL | | |
| **Next/Last Setting Date** | N/A | | |
| **Jury Fee Paid Date** | N/A | | |

### CURRENT PRESIDING JUDGE

| | |
|---|---|
| **Court** | 113th |
| **Address** | 201 CAROLINE (Floor: 10) HOUSTON, TX 77002 Phone:7133686113 |
| **JudgeName** | RABEEA COLLIER |
| **Court Type** | Civil |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| XIE, KEPING (M D) (PHD) | PLAINTIFF - CIVIL | | KRENEK, EDDIE M. |
| UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER | DEFENDANT - CIVIL | | |
| UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT | DEFENDANT - CIVIL | | |
| UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER BY SERVING ITS | REGISTERED AGENT | | |

UNIVERSITY OF TEXAS AT HOUSTON POLICE      REGISTERED AGENT
DEPARTMENT BY SERVING ITS

## INACTIVE PARTIES

No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 11/27/2019 | ORIGINAL PETITION | | | 0 | | KRENEK, EDDIE M. | XIE, KEPING (M D) (PHD) |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|------|--------|------------|--------|-----------|--------|--------|----------|----------|----------|------------|
| CITATION | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER BY SERVING ITS | 11/27/2019 | 12/2/2019 | 12/11/2019 | | | 73700993 | E-MAIL |
| | 1515 HOLCOMBE BOULEVARD HOUSTON TX 77030 | | | | | | | | | |
| CITATION | SERVICE RETURN/EXECUTED | ORIGINAL PETITION | UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT BY SERVING ITS | 11/27/2019 | 12/2/2019 | 12/11/2019 | | | 73700994 | E-MAIL |
| | 7777 KNIGHT ROAD HOUSTON TX 77054 | | | | | | | | | |

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|--------|----------|-----------|------|-----|
| 88545065 | Citation | | 12/12/2019 | 2 |
| 88545066 | Citation | | 12/12/2019 | 2 |
| 88312730 | Plaintiff's Original Petition and Request for Disclosure | | 11/27/2019 | 35 |

# 2. PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

11/27/2019 7:23 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 38864171
By: Nelson Cuero
Filed: 11/27/2019 7:23 PM

CAUSE NO. _____

| | | |
|---|---|---|
| **KEPING XIE, M.D., PhD** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE UNIVERSITY OF TEXAS M.D.** | § | |
| **ANDERSON CANCER CENTER; and** | § | **HARRIS COUNTY, TEXAS** |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **HOUSTON POLICE DEPARTMENT** | § | |
| | § | |
| **Defendants** | § | **_____JUDICIAL DISTRICT** |

---

**PLAINTIFF'S ORIGINAL PETITION
AND
REQUEST FOR DISCLOSURE**

---

TO THE HONORABLE JUDGE AND JURY OF SAID COURT:

Plaintiff KEPING XIE, M.D. PHD (sometimes referred to herein as "Xie" or "Keping Xie" or "Plaintiff") files this Plaintiff's Original Petition and Request for Disclosure, bringing suit against Defendants THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER (sometimes referred to herein as "MDA) and THE UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT (sometimes referred to herein as "UTPD") (all of these defendants sometimes collectively referred to herein as "Defendants"), and for causes of action would respectfully show as follows:

**I.   DESIGNATION OF DISCOVERY CONTROL PLAN
AND REQUEST FOR DISCLOSURE UNDER TEX. R. CIV. P. 194**

1.    Plaintiff expects that discovery in this cause would proceed most appropriately under Level 3 and requests that the Court enter a scheduling order for this case.  Pursuant to Rule

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 1

47 of the Texas Rules of Civil Procedure, and for this purpose, Plaintiff states and affirmatively pleads that, based on the information now available to Plaintiff, the monetary relief sought against Defendants is in excess of $1,000,000.00.  Accordingly, Plaintiff further affirmatively pleads that this suit and these claims do not fall under the expedited actions process of Texas Rule of Civil Procedure 169 because the monetary damages and relief sought are in excess of $1,000,000.00, and because injunctive relief is sought by Plaintiff.

2.       Pursuant to Rule 190.4 of the Texas Rules of Civil Procedure and, pursuant to Rule 194, **Defendants are requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a)-(l); additionally, Plaintiff requests that Defendants disclose all documents, electronic information, and tangible items in Defendants' possession, custody, or control that may be used to support any of Defendants' defenses.**

## II.  PARTIES, JURISDICTION AND VENUE

3.       Plaintiff Keping Xie is an individual that was residing in Harris County, Texas during some or all of the material events at issue in this case.

4.       Defendant The University of Texas M.D. Anderson Cancer Center is a governmental agency or unit of the State of Texas.  MDA may be served with citation and process by serving its President or administrative head as follows:  Peter WT Pisters, M.D. at The University of Texas M.D. Anderson Cancer Center, 1515 Holcombe Blvd., Houston, Texas 77030, or wherever he may be found.  MDA was engaged in the actions and courses of conduct (about which Plaintiff complains) in Harris County, Texas at all material times relevant to the claims and matters at issue in this lawsuit.

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 2

5.     Defendant The University of Texas at Houston Police Department is a governmental agency or unit of the State of Texas.  UTPD may be served with citation and process by serving its Chief of Police and Chief Security Officer or administrative head as follows: William Adcox at The University of Texas Police at Houston, 7777 Knight Road, Houston, Texas 77054, or wherever he may be found.  UTPD was engaged in the actions and courses of conduct (about which Plaintiff complains) in Harris County, Texas at all material times relevant to the claims and matters at issue in this lawsuit.

6.     Plaintiff's causes of action arose from or are connected with one or more of Defendants' acts that occurred in whole or in part in Harris County, Texas.  Venue is proper in this Court, in the County in which all or part of the causes of action accrued, pursuant to TEXAS CIV. PRAC. & REM. CODE §§15.002(a)(1), (2), (3) and (4).  Additionally, venue is proper in Harris County, Texas pursuant to TEX. CIV. PRAC. & REM. CODE §101.102(a), as all or part of the causes of action arose in Harris County, Texas.

7.     The monetary damages sought by Plaintiff, exclusive of attorneys' fees and costs of court, exceed the minimum jurisdictional limits of this Court.  Plaintiff also seeks injunctive and equitable relief in this case, to the extent such is necessary to effectuate justice and to remedy the wrongs committed by Defendants and to attempt to make Plaintiff whole.

8.     Pursuant to TEX. CIV. PRAC. & REM. CODE §101.101, notice of these claims was properly sent to Defendant MDA on or about May 20, 2019, which date was less than six months after the day that the incident giving rise to the claims occurred.  Pursuant to TEX. CIV. PRAC. & REM. CODE §101.101, notice of these claims was properly sent to Defendant UTPD on or about

May 23, 2019, which date was less than six months after the day that the incident giving rise to the claims occurred. Accordingly, all conditions precedent to Plaintiff pursuing these claims as well as Plaintiff's recovery of or obtaining of relief as requested herein have occurred or have been met or performed.

### III. FACTUAL BACKGROUND

9.      Based upon the facts as more specifically set forth herein, this case concerns claims for violations of 42 U.S.C. §1983 for the wrongful and malicious criminal prosecution of Plaintiff Xie, the false arrest of Xie, for unreasonable searches and seizures of Xie's property and property rights, for negligent actions, and for damages and injuries resulting from these claims; for violations of Xie's constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States; for violations of the "Takings Clause" of Article I, §17 of the Texas Constitution; claims of conspiracy; and injunctive relief. Additionally, Xie seeks certain injunctive relief ordering the return of Xie's property and property rights to him, and enjoining Defendants from utilizing or otherwise taking certain action with respect to such property, property rights, data and information.

10.     Plaintiff Xie was previously a long-term employee, professor and well-respected cancer researcher at Defendant MDA. Xie began his tenure and affiliation with MDA in 1990 as a Graduate Research Assistant in the Department of Cell Biology and worked his way up through the MDA system to most recently being a Professor (Tenured) in the Department of Gastroenterology, Hepatology & Nutrition at MDA. Xie had impeccable credentials, establishing himself as one of the preeminent cancer research scientists in his area of expertise. Xie devoted

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 4

his professional life and career to searching for a cure or treatment for pancreatic cancer.

11.     Xie holds multiple degrees, with extensive education and training as both a medical doctor as well as holding masters and doctorate degrees in Pathophysiology, Cancer Biology and Immunology.  He obtained his PhD from The University of Texas in Houston, Texas, in 1995, and remained with MDA until April of 2018.

12.     During his tenure at MDA, some of the administrative appointments Xie held include the following:  Member, Graduate School of Biomedical Sciences at The University of Texas Health Science Center in Houston, Texas; Member, Cancer Biology Program, The University of Texas Graduate School of Biomedical Sciences in Houston, Texas; Chief, Section of Gastroenterology Research; and a host of other academic appointments.  Xie was also well-respected throughout the USA as well as internationally, having served in many different capacities as a grant reviewer as well as a member of many different administrative panels.  For example, Xie served as a Merit Review Panel member for Oncology C in the Department of Veterans Affairs and Veterans Health Administration; and as a National Institute of Health ("NIH") Review Member on Tumor Progression and Metastasis, to name but a few.  Xie was very well-published in peer-reviewed journals (in excess of 160); participated in and accomplished a number of highly-specialized abstracts with collaborators; wrote portions of books relating to his cancer research and his area of cancer expertise; served as Editor on a number of well-respected Editorial Boards, such as i) International Journal of Pancreatology, ii) International Journal of Gastrointestinal Cancer, iii) Clinical Cancer Research Associate Editor, and many others; was a journal reviewer as well as grant reviewer; and held teaching positions as an Adjunct Professor,

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 5

Associate Professor, Professor, and Tenured Professor at MDA.

13.     Of particular significance was the fact that Xie was prolific in generating grant applications, being awarded research grants, and fully performing the research associated with those grants.   As of the beginning of January 2018, Xie held and was actively involved in performing research concerning four NIH grants totaling over $7 million.  Xie's wife at that time also was a professor and cancer researcher at MDA and had three NIH grants totaling almost $5.5 million.   Together, they had a significant number of research grants totaling more than $12.5 million in grant funding, which grant funding was generally recognized as being more than respectable, as well as highly sought after.

14.     Xie was in a small group of very well-known cancer researchers in the USA and worldwide.  His accomplishments in leadership, education, research and administrative have been well-recognized by peers and collaborators in the national and international scientific communities.  Xie's successes, however, made him a target by others at MDA.  Xie also exhibited other characteristics that did not sit well with MDA administration.  When Xie saw research improprieties being perpetrated by others at MDA, Xie did what was right, and notified the appropriate personnel.  These attributes, along with his willingness to fight for what was proper and right in the face of extreme condemnation and against very powerful agencies (like MDA) did not sit well with certain MDA personnel.

15.     Several years earlier (around 2004), MDA attempted to target Xie by making false claims against him concerning concocted and falsified allegations relating to his employment at MDA.  In the course of the next seven years, Xie fought back against MDA and its efforts to

improperly target and discriminate against certain professors and cancer researchers at the institution.  Xie was ultimately successful in his efforts to defend against MDA's illegal and illegitimate claims, successfully resolving Xie's claims and his efforts to clear his good name in late 2011.

16.     From 2011 to 2017, Xie prospered in his cancer research.  His reputation and standing in cancer research circles continued to grow, as Xie pursued his goal of eradicating pancreatic cancer. Key administrative personnel within MDA, however, were displeased when Xie brought research improprieties committed by others at MDA (or which MDA attempt to cover up) to the attention of others, including certain law enforcement investigative agencies and/or to the agencies involved in awarding and/or administering grants.

17.     Xie and his wife had entertained leaving MDA for other research and administrative opportunities.  They had even received very lucrative, career-building employment and research opportunities at other institutions, where they could carry out high-level cancer research.  These other opportunities necessarily involved the transfer of the grants Xie had been awarded and on which he continued to work, as MDA policies, procedures and/or the manner in which those policies and procedures were effectuated (in combination with the protocols of grant awarding agencies such as NIH) either always or almost always resulted in the principal investigator transferring the grants to the new institution.  MDA knew this, and also learned about Xie's other research opportunities.  Ultimately, because Xie was committed to proceeding further towards conclusion on certain of his research projects and working towards addressing, finding treatment protocols for, and/or eradicating pancreatic cancer while at MDA, Xie and his wife continued

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 7

working at MDA.

18.     In 2017, Xie and his wife discovered certain improprieties that had been committed by other cancer research personnel at MDA, and reported those improprieties.  Instead of taking appropriate action, MDA attempted to cover up the improprieties.  In January of 2018, action was taken by Defendants to ensure that Xie and his wife were appropriately punished.  Without proper basis or probable cause, personnel with UTPD raided Xie's office and his home, using false identifiers as well as threats of immediate arrest against Xie if he attempted to resist Defendants' efforts.

19.     Defendants used the efforts of UTPD Inspector Charles G. Dunn ("Dunn") to accomplish much of the "dirty work" that was about to play out in Defendants' efforts to punish, smear and ruin Xie, and to violate his civil rights.  Dunn was a retired police officer who had "connections" with the Houston Police Department, as well as with certain criminal prosecuting agencies in Harris  County.  Dunn also is a licensed attorney, having been licensed since 1999. After Dunn became affiliated with Defendant UTPD, based on information and belief, Dunn was utilized to target certain MDA personnel, and to "take them down" using whatever means necessary.

20.     In January of 2018, after Xie had already made one report of impropriety committed by certain MDA research personnel and when Xie was in the process of making another report to a criminal investigation agency, Dunn attempted to raid Xie's office and his home.   When Dunn approached Xie for the first time, Dunn introduced himself and falsely represented that he was with the Federal Bureau of Investigation ("FBI").  Without probable cause or other reasonable

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 8

basis, Dunn continued to threaten Xie with immediate arrest and other negative actions if Xie did not "agree" to allow Dunn into areas Dunn would otherwise not have permission to enter without a warrant.  Dunn, on behalf of Defendants, undertook and effectuated a highly improper and illegal course of action that was designed and intended to humiliate, smear and ruin Xie, and to violate his civil rights.

21.     Throughout the day, Dunn continued to "work on" Xie under the deception and false presentation that he was with the FBI.  Dunn made clear to Xie that MDA had a lot of power and that Xie should not have taken action to report anything about MDA or its personnel, even when it was the right thing for Xie to do.  Throughout the day, Dunn continued to threaten Xie's freedom and liberties if Xie did not acquiesce to Dunn's demands, including his demand that Xie voluntarily allow Dunn to enter Xie's house.  Despite Dunn's threats, Xie continued to refuse Dunn's demands to be allowed to enter upon Xie's home and residential premises.  At no point did Xie consent to Dunn searches.  Yet, Xie's lack of consent or permission did not stop nor deter Dunn.  He used force and nonetheless entered upon Xie's premises.  There, Dunn began to take note of what he saw and was able to "inventory" items based on his illegal and baseless search of Xie's house, as Dunn knew he did not have proper authority or basis for entering into Xie's residence.  While it is not entirely clear what all Dunn did while in the Xie residence, based on information and belief, it appears Dunn may have also illegally taken and seized certain items from Xie's residence, without any legal basis to do so.  After a lengthy period of time, and after Xie repeatedly protested Dunn being in his house, making abundantly clear he was standing on his constitutional rights to prohibit Dunn's entry into his house, Dunn then left.

22.     Some hours later, Dunn and others purportedly affiliated with one or both of the Defendants reappeared at Xie's house, executing a warrant to seize any and all computers, phones, data storage devices, and other items that Dunn did not have probable cause to obtain, search or seize.  Dunn (and others purportedly acting with him) took these actions as the duly authorized employees and/or agents of Defendants.  It was later discovered that UTPD officer Richard Gonzalez (acting on behalf of both Defendants) utilized the illegally obtained information and/or evidentiary items from Dunn's unauthorized entry into Xie's residence to obtain a search warrant that was without probable cause and severely overbroad in scope.  The evidence simply did not exist to substantiate the search warrant.  These actions were part of the protocols used by Defendants in accomplishing the violations of Xie's constitutional rights.

23.     Through this illegal seizure, Dunn and those with him took over 88 data drives, computers, phones, data storage devices, and other similar items, including items that belonged to persons other than Xie; items that contained the family pictures, Xie's children's school projects, Xie's and his wife's research and other business information and data, and other important personal effects that had nothing to do with MDA or Xie's affiliation with MDA.  The items illegally seized and taken by Dunn and his cabal on behalf of Defendants included Xie's evidence of MDA's past and more recent improprieties; Xie's files of attorney-client communications and other legally-privileged items; Xie's recordings of conversations; and other evidence of improprieties by MDA, UTPD and the cronies working for them on their behalves.

24.     Also taken were Xie's personal telephones, which included attorney-client privileged communications as well as recordings of improprieties committed by Defendants,

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 10

including Dunn.  As is typical of technology of this nature, Xie's telephones were the only remaining way for Xie to send and receive email communications and to otherwise communicate with family, friends, his legal counsel, and others.

25.     Xie was immediately placed on administrative leave and not allowed to return to MDA's premises or to utilize any of the MDA communications systems that were instrumental tools for Xie's cancer research.  Defendants then proceeded with making things difficult for Xie, all the while continuing to engage in improprieties that are part of the violations of Xie's constitutional rights.  Defendants illegally took all forms of Xie's electronic communications (whether by telephone, email or text messaging).  All phone and email accounts Xie had while at MDA were cut off.  Xie's sources of contacts (telephone, email, physical addresses) were wholly taken from Xie, preventing his ability to communicate with pretty much most people (colleagues, friends, family, legal counsel, etc.).  MDA personnel then proceeded to threaten Xie with actions that were designed and intended to make things so difficult for Xie that he was left with no choice but to leave MDA or otherwise risk the loss of his life's work in cancer research.

26.     Xie decided to resign and retire his position with MDA, and to go elsewhere to continue his research.  Xie relayed that information to MDA, making clear that he would be transfer the prestigious grants to another institution and continue his cancer research elsewhere. Xie also took all appropriate actions to relay to NIH his decision to leave MDA and move all his research operations to another institution, including transfer of all 4 NIH RO1 grants to the new institution.

27.     Xie immediately reached out to other cancer research institutions to effectuate his

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 11

move and the transfer of the grants, and to salvage his career and his life's work in cancer research. Xie received much interest from numerous other institutions for him to move his research operations to those facilities. However, as efforts progressed to higher levels in the recruiting process, MDA ultimately interjected itself into Xie's opportunities, poisoning those opportunities to the point that they were lost. Xie persisted in his efforts. He ultimately joined the University of Arizona College of Medicine at Phoenix ("U of A") as a faculty Professor, where he was also selected to serve as Chair of Department of Interdisciplinary Oncology, and to serve as Deputy Chair of Department of Internal Medicine. These positions were highly sought-after positions that were both financially and occupationally rewarding to Xie. Those positions provided increased compensation and benefits to Xie and his family and would allow for him to continue to financially provide for his wife and children. Arrangements were made to bring over research staff from MDA, and to transfer Xie's four grants to U of A. Xie began his positions at U of A on July 22, 2018. Unfortunately, Defendants were not done with Xie yet; they were intent upon continuing to take action to destroy Xie and to ensure that he was unable to move the lucrative research grants away from MDA.

28.     From April 2018 to July 2018, Xie continued to work on transferring the prestigious grants to another institution, which ultimately was U of A. NIH supported Xie in his transfer efforts, making clear to MDA that NIH preferred the grants to remain with Xie as principal investigator and the person most knowledgeable and capable of properly performing the research and carrying out the grant terms. After all, Xie had an excellent reputation for doing top-notch cancer research and was known for accomplishing cancer research at the highest of levels. In July

2018, NIH made clear to MDA that NIH would not approve a new principal investigator at MDA, and that Xie was the person NIH wanted over the grants.  This message was repeatedly conveyed to MDA personnel attempting to block the grant transfers.  MDA continued to pressure NIH to allow MDA to keep the grants, along the way stepping up their campaign to smear, discredit, malign and destroy Xie.  NIH helped instruct Xie on what was to be done for Xie to accomplish the grant transfers, which Xie did.  Personnel with U of A were also involved in the logistics of accomplishing the grant transfers.  It was becoming abundantly clear that MDA would endeavor to take any and all actions, no matter how sinister, illegal or improper, to accomplish its goals.

29.     In August 2018, MDA again stepped up efforts to try and keep Xie's four grants, and to stop Xie from transferring them to U of A.  Xie's hard-earned grants represented substantial sums of money to MDA, who was motivated by greed and other improper incentives to engage in the actions at issue in this petition.  MDA identified other principal investigators to take over the grants, which was not approved or acceptable to NIH.  In fact, NIH found the three researchers (who MDA identified to be the principal investigators over the Xie grants) to be "inappropriate and unqualified," initially declining approval for these three investigators to take over the four Xie grants.

30.     MDA continued its efforts to poison and interfere with Xie's new research positions and research opportunities with U of A, which was accomplished through the violations complained about in this petition.  MDA relayed false information about Xie to U of A and to NIH, in the hope of ensuring that Xie's grants and the significant funding from those grants remained with MDA.  Through these actions, MDA reaped a dual benefit—that being the ability prevent the

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 13

grant transfers while at the same time smearing, discrediting and ruining Xie in the process. Unbeknownst to Xie, Defendants were working on a much more sinister plan to ensure that MDA was successful in its efforts against Xie.

31.     In the years and months leading up to 2018, MDA had been the target of federal investigations into economic espionage through the theft and funneling of advanced cancer research and intellectual property to other countries, amongst other things. China was one of the countries accused of espionage, allowing MDA to target a number of its cancer researchers of Chinese descent, including Xie and his wife.  Defendants saw this as a convenient opportunity to further damage, smear and ruin Xie.  Based on information and belief, as well as very limited information obtained through other legal proceedings referenced below, MDA leaked and spread information about Xie to the effect that he was identified by MDA as being involved in espionage. Defendants and their personnel continued these efforts into August of 2018 and thereafter.

32.     When Defendants were initially unable to ensure Xie's four NIH grants would not be transferred and, instead, would remain at MDA, Defendants stepped up their efforts to inflict the final "death blow" to Xie.  In addition to spreading, leaking and disseminating false statements that Xie was engaged in cancer research and economic espionage benefitting China, Defendants added to their "insurance plan" to ensure they were successful against Xie.  Based on information and belief, Dunn and others working with, for and on behalf of Defendants (including UTPD officer Richard Gonzalez) began a new campaign and conspiracy to concoct false criminal charges against Xie.  Efforts were made to shop around the concocted, false criminal charges to different prosecuting personnel with whom Dunn and others had previous experience.  For appropriate

reasons, some of the prosecutors declined to act on the false narratives (based on information and belief). Other avenues for criminal prosecution were pursued by defendants and their agents and representatives. Ultimately, Defendants found brief success with their scheme to create a false narrative of concocted, baseless criminal charges of a most heinous nature...charges that Defendants would utilize to accomplish their highly sought-after death blow to Xie.

33.     After many weeks of MDA wrangling with NIH and U of A over the highly sought-after Xie grants, personnel with the National Cancer Institute ("NCI") and NIH made clear to MDA that NCI declined to participate in what NCI characterized as "the unethical act of [MDA] taking away a respected senior investigator's life's work." MDA's concocted and false narratives to NIH/NCI and to U of A were not accomplishing the intended result MDA needed to keep the grants. Less than a week later, and in furtherance of their scheme and conspiracy to harm and damage Xie through the illegal constitutional violations referenced herein, on August 20, 2018, Defendants were successful in having felony criminal charges filed against Xie. The criminal charges were for possession of child pornography. Based on information and belief, Defendants were instrumental in ensuring that the false criminal charges against Xie were spread, published and disseminated throughout the cancer research community locally, nationally and internationally. Defendants appeared intent on ensuring that NIH/NCI and U of A received notice of their successful efforts to smear and malign Xie, and to ensure that they were notified about the false and malicious criminal prosecution of Xie. They were all notified, thanks to the efforts of Defendants.

34.     On August 24, 2018, Xie was placed on formal leave by U of A from all his

positions with the institution.  U of A made clear that the serious nature of the crime with which Defendants had Xie charged (possession of child pornography), in combination with the false narrative about Xie's purported conduct underlying the criminal charges, was the sole reason for the negative action taken against him by U of A.  Despite numerous efforts taken to assure U of A that the false criminal charges maliciously instigated against Xie by Defendants were false, baseless and done for ulterior purposes through actions that violated Xie's civil rights, on October 12, 2018, U of A effectively terminated Xie's affiliation, employment, and cancer research opportunities with that institution.  Xie's previous good standing and reputation in cancer research and the "dream job" and incredible opportunities for him to continue his life's work in cancer research were effectively and permanently ended by Defendants' wrongful conduct and actions.

35.    For good measure, Defendants didn't stop there.  Defendants leaked, published and disseminated their false narrative about Xie that resulted in their successful efforts to have him criminally prosecuted.  Reports about the criminal charges were sent out to colleagues of Xie within MDA, nationally outside of MDA, and internationally.  Within days, Xie was falsely labeled with the stigma of felony charges associated with possession of child pornography.  He began receiving hate-based communications stemming solely from Defendants' false narrative and fraudulent malicious conduct in furtherance of the constitutional violations that resulted from the criminal prosecution.  Persons working for and associated with Defendants, including Dunn, were reported to be gleeful about the results of their work to smear, ruin and castigate Xie once and for all.  In the process, MDA was able to end the efforts that were brewing to transfer Xie's grants, instead being able to keep the grants for itself.

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 16

36.     Despite Xie's good faith efforts to find other cancer research opportunities, he was unable to do so.  The felony criminal charges filed by or at the behest of Defendants was too high a hurdle for Xie to overcome.  During the months that followed, further media was sought and pursued by Defendants to ensure that their death blow to Xie stuck.  Based on information and belief, Defendants leaked to major media outlets false statements and heinous accusations that Xie was engaged in and committing intellectual property espionage.  Defendants' malice towards Xie was evident through the continued actions taken by Defendants to ensure Xie was destroyed.

37.     Xie incurred substantial legal fees and costs to address the false criminal allegations filed and pursued by Defendants against him.  Because he was innocent of the charges, Xie was resolved to fully defend against Defendants' illegal and improper actions.  During this process, what was discovered was astounding, and showed the falsity behind the criminal charges, as well as the extent and nature of the constitutional violations Defendants committed against Xie.  Preeminent experts on the topics obtained and analyzed the data and the background information on the data Defendants utilized to file and prosecute the criminal charges.  The data behind certain of the images on which Defendants relied in support of the false criminal charges reflected that the images came from sources that appeared to have placed the images on the data storage devices after they were in the possession of Defendants or others affiliated with them.  Certain of the images appeared to have been obtained out of "trash bins" six years earlier.  Most importantly, **none of the images were of child pornography**.

38.     Additionally, analyzation of the data on the computer devices reflected that no searches for the subject child pornography images occurred or were reflected on those computers.

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 17

In other words, the evidence reflected that Xie never made or ran any searches necessary for the images to have been sought, received, obtained and stored.  The images that Defendants claimed to be images of confirmed child pornography were actually "recognized files" that were previously uploaded and recognized as not identify images of child pornography.

39.     Further evidence obtained from the seized devices showed that there were no searches conducted looking for child exploitation or child pornography material; no Peer to Peer software was located on the devices; no history of Peer to Peer searches existed; and searches for both common and obscure child pornography terms were applied to the devices, reflecting absolutely no hits for any term.  This evidence wholly debunked the basis for Defendants' contention that Xie possessed or actively sought child pornography.  More importantly, the evidence reflected that Defendants knew or should have known that the devices did not contain any child pornography; that Xie never possessed any such child pornography; and that the claims filed and prosecuted against Xie were knowingly false, unsubstantiated and without any basis.

40.     Simply put, the evidence overwhelmingly demonstrated that Xie had not committed the actions necessary and required to support the criminal charges.  The evidence reflected that Defendants likely had actual knowledge that their claims were false, and for improper purposes decided to file and prosecute those claims, nonetheless.

41.     On November 28, 2019, Xie was "no billed" by a Harris County Grand Jury, and the false criminal charges sought, filed and prosecuted by Defendants against Xie were dismissed. By this time, however, the damages designed and intended to be inflicted on Xie by Defendants was fatal to his career, his reputation, and his standing in the community.  But Defendants were

not yet through with their wholesale assault on Xie.

42.     Xie attempted to retrieve the property items that Defendants had wrongfully and improperly seized and obtained from Xie and that were still in their possession.   Instead, Defendants continued to convert and fail to return to Xie these personal property items that Defendants obtained through the improprieties and other constitutional violations of Xie that Defendants perpetrated.

43.     Xie has continued to suffer the ramifications of the wrongful and illegal actions committed by Defendants.  Xie has lost the cancer research grants that he had been awarded.  Xie lost his professional positions with U of A and has been unable to find other work or positions in the cancer research field.  His reputation and standing, both personally and professionally, has been irreparably tarnished and damaged.  His life's work in cancer research has been totally destroyed by Defendants and their cabal of evildoers intent upon destroying Xie, improperly using the awesome powers of the State of Texas for improper purposes.

44.     Xie's skills and experience in cancer research have been irreparably damaged and discarded.  His life opportunities, both professionally and financially, have been wholly destroyed. His zeal for providing quality cancer research, and his ability to help those persons stricken with the type of cancer that Xie has made it his life's mission to destroy, have taken a back seat to the wrongful actions and intentions of Defendants.  Not only did Defendants benefit financially and otherwise through their wrongful actions and conduct…so did cancer.

## IV.  INCORPORATION OF ALLEGATIONS

45.     All of the allegations in each of the foregoing paragraphs are incorporated by

reference into each of the following claims for relief as if fully set forth in each such claim.

## V.  CAUSES OF ACTION

### A.      VIOLATION OF XIE'S CONSTITUTIONAL RIGHTS
### §1983 CLAIMS BASED ON MALICIOUS CRIMINAL PROSECUTION,
### FALSE ARREST AND IMPROPER SEIZURE OF PROPERTY

46.     Based upon and incorporating the facts pled above, Plaintiff Xie asserts claims for violations of his constitutional rights protected by the Fourth, Fifth,  and Fourteenth Amendments of the Constitution of the United States.  Xie's Fourth Amendment and Fourteenth Amendment constitutional rights were violated by and through the actions of Defendants and their agents and representatives as set forth above, including their actions to initiate and accomplish the malicious criminal prosecution of Xie as well as his false arrest.  Defendants, without probable cause or other basis, sought, initiated, filed, pursued and prosecuted false criminal charges against Xie, and did so maliciously.  Xie was charged with felony crimes of possession of child pornography as a result of Defendants' wrongful actions and their false reports prepared by UTPD personnel along with evidence technicians, all of whom were acting on behalf of both Defendants.

47.     Defendants' utilized false statements in charging instruments to substantiate Texas Penal Code violations against Xie for Possession or Promotion of Child Pornography.   The criminal charges were without probably cause and were based on a false narrative of evidence obtained through an illegal and unconstitutional search and seizure.  The charging instrument falsely claimed the use of evidence obtained through a consensual search, which was not the case. The charging instrument claimed false pretenses for obtaining a search warrant.  The search warrant itself was based on false information and was knowingly intended to be overly broad.  The

charging instrument contains knowingly false statements about data devices (wrongfully seized from Plaintiff without probable cause) containing child pornography.  The false statements also include assertions that child porn images existed on the data devices.  Defendants were motivated to smear, malign, discredit, and defame Xie so that his efforts to transfer the financial grants were thwarted and stopped.  Defendants had financial motives to accomplish the deprivation of Xie's constitutional rights.  They also had personal and professional motives to crush Xie.

48.     Each individual act committed by Defendants in furtherance of their illegal scheme was in itself a violation of 42 USC §1983, and a violation of Xie's constitutional rights.  The totality of the actions by Defendants was for the purpose of taking Xie's rights to the financial grants awarded to him through his cancer research and grant qualification work.  Defendants accomplished their illegal scheme through a myriad of violations of Xie's constitutional rights, including those set forth herein.

49.     Defendants' actions also amount to a violation of Xie's Fourth Amendment rights in that there was no probable cause to initiate, seek, file, prosecute or pursue criminal charges for possession of child pornography.  There was no property authority, basis or probable cause to engage in the malicious criminal prosecution of Xie; instead, such actions were done for ulterior, improper and illegal financial and professional motives and purposes.  Additionally, there was no proper authority, basis or probable cause to obtain a search warrant, or in the alternative to obtain a search warrant that was grossly overly broad in scope and content.  Defendants were not justified in engaging in these actions, but did so for improper purposes in order to: i) accomplish illegal objectives using either legal or illegal tools and means; ii) accomplish legal objectives using illegal

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 21

tools and means; and/or iii) accomplish legal objectives using improper means and methods that include violations of Xie's constitutionally-protected rights.

50.     More specifically, Xie's Fourth Amendment rights were violated through Defendants' unlawful search of Xie's residence (without consent or warrant); the obtaining of information and certain evidence items by Defendants' agents and representatives at a time that Defendants had illegally and without proper authority, basis or probable cause entered into Xie's residence; the seizure of evidence and data devices without proper authority, basis or probable cause; the obtaining of a search warrant based on ill-gotten information and items obtained without proper authority, basis or probable cause; the obtaining of an overly broad search warrant based on false statements and improperly obtained and utilized information after entering Xie's residence and other personal spaces without proper authority, basis or probable cause; the taking of Xie's personal property items without proper authority, basis or probable cause; and Defendants' continued conversion of and refusal to return Xie's personal property and property items.

51.     The Fifth Amendment to the US Constitution prohibits a person from being deprived of "life, liberty or property without due process of law" and prohibits the taken of private property for public use without just compensation.  Defendants' actions violate Xie's Fifth and Fourteenth Amendment rights in that he was denied or deprived of his liberty and property without due process of law, and because his private property (including, but not limited to, his rights in and to the research grants, as well as his personal property items as set forth above) was taken from him for public use without just compensation.

52.     Defendants' seizing Xie's data devices by and through the illegal means, methods

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 22

and actions taken by them and their agents and representatives as set forth above was done without proper basis, authority or probable cause; was accomplished through utilizing false statements and ill-gotten information obtained through the unlawful access to Xie's residence; and was continued when Defendants failed and refused to return to Xie his property.  The property items illegally taken and converted include those items set out above, which also include the personal contents of the data; family pictures; children's projects; the contents of personal and professional papers and works; privileged and confidential work product; privileged and confidential attorney-client communications; privileged and confidential legal work product sent to Xie by counsel through properly-maintained privileged attorney-client communications; voice recordings of Defendants' and their personnel that support Xie's past and present claims and causes of action; Xie's privileged cancer research and related communications; Xie's telephones and data on such phones; Xie's personal, family and professional communications and correspondences, as well as pertinent contact information and data; and a host of other similar items.

53.    Defendants' actions as set forth above amount to unreasonable searches and seizures of Xie's person, personal effects, house/residence, and papers/data/professional work, in violation of the Fourth Amendment.  The search warrant as well as arrest warrant were issued without probable cause.  The search warrant did not properly describe with particularity and in a manner that was not unreasonably overly broad the specific property items that had a logical nexus or other reasonable relationship to a proper, legally supported claim.

54.    The warrants contained false statements and information that were knowingly and intentionally included, or that were included with reckless disregard for the truth, and which false

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 23

statements were necessary in a thinly veiled effort to substantiate probable cause (which Xie contends was not sufficiently accomplished).  Likewise, Xie's Fourth Amendment rights were also violated by the failure of the warrants to set forth particular facts and circumstances underlying and demonstrating the existence of probable cause, including facts and legally-obtained facts and circumstances that demonstrate the reliability of the information and the credibility of the sources of such information.

55.     By including false statements (such as statements about evidence obtained through a consensual search, which consensual search never happened with, by or through the consent of Xie or anyone properly acting on his behalf) and by disseminating false statements of the identity of the investigator (i.e., Dunn claiming and holding himself out as being with the FBI, which false statement was particularly concerning in light of Xie's reporting of improprieties to the same agency as referenced above), Defendants and their agents and representatives deliberately or reckless utilized false statements.  In short, Defendants utilized false statements, deception and misstatements that were the product of deliberate falsehoods designed and intended to accomplish the results sought by Defendants, or alternatively were the product of reckless disregard for the truth under circumstances that Defendants and their agents and representatives knew or should have known were false, deceptive, fraudulent and/or misleading.  Defendants entertained serious doubts as to the truthfulness of the statements and factual events, and nonetheless proceeded with utilizing the false information and statements to accomplish and perpetrate their illegal scheme.

56.     The materials and devices illegally seized by Defendants and used as the basis for the malicious prosecution of the criminal charges for possession of child pornography did not

contain child pornography or reasonably supported indicia of such items.   Corroborative tests likewise debunked the claims that Xie possessed child pornography.   Cross checks and cross references were available to also demonstrate the lack of existence of child pornography as well as the lack of other essential elements necessary to prove that Xie committed the criminal acts beyond a reasonable doubt.  The totality of all the evidence (or lack thereof) and the nonexistence of evidence to support the essential elements of the criminal charge show that probable cause to initiate and prosecute the criminal charges against Xie did not exist.

57.    Defendants' actions also amount to violations of Xie's Fourth Amendment rights to be free from false arrests.  For the reasons set forth above, Defendants also committed violations of Xie's constitutional rights against such actions.

58.    Accordingly, for the reasons set forth above and because there was no probable cause to initiate, file, procure or pursue criminal charges against Xie, Defendants' actions constitute the deprivation of Xie's constitutional rights, including, but not limited to:  i) Xie's rights pursuant to the Fourth and Fourteenth Amendments of the Constitution of the United States, including his rights to be free from unreasonable/illegal searches and seizures; ii) Xie's right to be free from police harassment and intimidation as provided for in the Fifth, Sixth  and Fourteenth Amendments of the Constitution of the United States; iii) Xie's right to be free from malicious prosecution, malicious abuse of process, unlawful arrest, and unlawful seizures as provided for by the Fourth and Fourteenth Amendments to the Constitution of the United States; and iv) Xie's right to be free from deprivation of liberty and property and his right to due process of law as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States.   The actions

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 25

of Defendants amount to malicious criminal prosecution, among other causes of action, and to violations of Xie's civil and constitutionally guaranteed rights pursuant to and in violation of 42 U.S.C. §1983.

59.    All elements for bringing a cause of action for violations of 42 U.S.C. §1983 based on malicious prosecution of criminal proceedings, and/or for malicious criminal prosecution through the filing and prosecution of false charges for possession of child pornography, exist. Criminal prosecutions were commenced against Xie that were initiated or procured by Defendants. Such criminal prosecutions at issue as set forth in this pleading were terminated in Xie's favor, and he was innocent of all such charges.  Defendants did not have probable cause to initiate or procure such prosecutions.  The prosecutions were initiated and procured with malice, resulting in Xie suffering substantial damages and injuries.

### B.    VIOLATION OF XIE'S CONSTITUTIONAL RIGHTS §1983 ALTERNATIVE CLAIMS BASED ON NEGLIGENCE

60.    Based upon and incorporating the facts pled above, Plaintiff Xie asserts claims for violations of 42 U.S.C. §1983 resulting from Defendants' negligence in failing to property investigate the underlying matters prior to seeking, filing, prosecuting and pursuing felony criminal charges against Xie, and in failing to implement and put in place adequate and much needed policies, procedures, protocols and guidelines, and to properly monitor and supervise personnel engaged in carrying out the actions in furtherance of such policies, procedures, protocols and guidelines. Defendants failed to provide training and controls over the ability of its personnel to utilize false statements and to provide false information in order to effectuate the violations against Xie as set forth above.  Either Defendants' actual maliciousness, or alternatively

Defendants' indifference concerning the actions of their duly charged agents and representatives, resulted in the improper initiation and procurement of criminal charges against Xie. Such policy failures now and in the future resulted, and will continue to result, in the continuing violations of the constitution rights of citizens and residents of Texas and the United States.

61.     Proper remedial measures and the implementation of adequate policies, procedures, guidelines and protocols, in combination with proper oversight, monitoring, supervision and training of personnel carrying out the actions, would prevent situations to occur that allow for and effectuate the violations of constitutional rights similar to those violations that Xie was caused to suffer. Specifically, Defendants were negligent, or in the alternative committed violations of Xie's constitutional and civil rights in violation of 42 U.S.C. §1983, in the following respects:

a.      Failing to implement written policies, procedures, protocols and guidelines for its investigating officers and supervisory personnel over such investigating officers preventing false information and statements to be utilized to initiate, procure and effectuate searches and seizures of property;

b.      Failing to implement written policies, procedures, protocols and guidelines for its investigating officers and supervisory personnel over such investigating officers ensuring that probable cause exists based on truthful information and statements to effectuate searches and seizures of property;

c.      Failing to implement written policies, procedures, protocols and guidelines for its investigating officers and supervisory personnel over such investigating officers preventing the initiation, procurement or prosecution of criminal charges for possession of child pornography, including the use of competent and qualified technology tools and personnel, along with cross-checks and corroborating evidence, to ensure that data and devices contain actual child pornography, and to ensure that all elements of such cause of action exist;

d.      Failing to implement written policies, procedures, protocols and guidelines for its investigating officers and supervisory personnel over such investigating officers, along with training and proper secondary oversight, to prevent leaks and the dissemination of information about claims brought or pursued against citizens that

have the tendency to, or that are likely to, result in irreparable harm to the accused by the mere accusation being disseminated;

e.   Failing to supervise and train its investigating officers and personnel to ensure that all statements and actions taken in furtherance of search warrants are corroborated and verified utilizing legally obtained information to support such warrants, before they are executed; and

f.   Failing to supervise and train its investigating officers and personnel to ensure that all statements and actions taken in furtherance of arrest warrants are corroborated and verified to ensure probable cause exists for such prosecution and arrest, with heightened burdens and secondary corroboration to ensure that illegal methods and means are not utilized, and to ensure that constitutionally-protected rights are not infringed.

62.   All elements for bringing a cause of action for violations of 42 U.S.C. §1983 based on such negligence exist.  Criminal prosecutions were commenced against Xie that were initiated or procured by Defendants and accomplished through the failures to have in place the policies, procedures, protocols and guidelines set forth above.  Such criminal prosecutions at issue as set forth in this pleading were terminated in Xie's favor, and he was innocent of all such charges.  Defendants did not have probable cause to initiate or procure such prosecutions.  The prosecutions and resulting impacts to Xie would have been wholly avoided if the policies, procedures, protocols and guidelines had been in place and properly utilized.  These failures resulted in Xie suffering substantial damages and injuries.

**C.   VIOLATION OF XIE'S CONSTITUTIONAL RIGHTS
TEXAS CONSTITUTION ARTICLE I, §17**

63.   Under the "Takings Clause" of Article I, §17 of the Texas Constitution, citizens are protected from the property being taken, damaged or destroyed for or applied to public use without adequate compensation or consent.  Based upon and incorporating the facts pled above, Plaintiff

Xie asserts claims for violations of the Takings Clause (under the Texas Constitution) committed by Defendants.  More specifically, through the illegal actions, schemes and conspiracies set forth above, Defendants violated the Takings Clause by improperly and illegally taking (or by permissibly taking utilizing illegal methods and means) Xie's rights in and to the research grants, and by improperly and illegally taking (or by permissibly taking utilizing illegal methods and means) Xie's rights in and to the property items illegally seized as referenced above.  Defendants continue to take and convert such property and property rights, to the exclusion of Xie.  Such actions intentionally performed and taken by Defendants were accomplished through the wrongful actions committed by Defendants and their agents and representatives; were without justification, privilege or excuse; resulted in the taking of Xie's property and property rights; and were either wholly or partially for public use.  The taking of Xie's property and property rights resulted in substantial damages and injuries to Xie.

### D.    CONSPIRACY CLAIMS

64.    Based upon and incorporating the facts pled above, Defendants jointly conspired with each other, with their agents and representatives, and with other third parties to violate Xie's constitutional rights in multiple respects as set forth above, all of which constitutional violations are incorporated herein by reference.  They jointly conspired to procure and effectuate the violations of 42 U.S.C. §1983; to initiate and procure the malicious criminal prosecution of Xie; to accomplish the constitutional violations of Xie's Fourth, Fifth and Fourteenth Amendments; to accomplish the unreasonable and illegal searches and seizures of Xie and his property rights; to illegally take without proper due process or just compensation Xie's property rights in and to the

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 29

research grants and in and to his other property; and to inflict the damages and injuries to Xie as set forth herein.

### E. REQUEST FOR INJUNCTIVE RELIEF

65.     Based upon and incorporating the facts pled above, Xie seeks injunctive relief enjoining Defendants from continuing to reap the rewards of their illegal actions and conduct, including Defendants continuing to seize, take, convert and hold on to Xie's property items, including the devices referenced herein above.   Xie requests that Defendants be ordered to immediately and without exception return all such seized items to Xie.   Additionally, Xie also seeks injunctive and equitable relief enjoining Defendants from using any information or data from the illegally seized devices, unless such information and data are otherwise obtained through proper and legally authorized discovery as set forth under Texas law and the Texas Rules of Civil Procedure.   To the extent that any seized and taken property items, or the data and information contained on them, is destroyed, Xie requests appropriate spoliation ramifications from Defendants' actions in either spoliating the information and data, or from Defendants' failure to properly preserve and protect such information and data.

### VI. CAUSATION AND JOINT LIABILITY

66.     Each and all of the above were the proximate or producing causes of damages and injuries to Xie who was innocent of any fault contributing to or causing these damages and injuries. All conditions precedent to Xie's recovery of damages have been met or have occurred.

67.     Xie alleges and asserts, as appropriate, the doctrines of agency, respondent superior and vicarious liability.   Defendant MDA and its agents and representatives are believed to be, at

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 30

all material times, the principals for whom Defendant UTPD and other third parties took actions that caused or participated in causing injuries and damages to Xie. Likewise, Defendant UTPD and its investigating officers and personnel were the agents of MDA, acting for or on behalf of MDA at all material times. UTPD's investigating officers and personnel were also the agents of UTPD when taking the actions about which Xie complains as set forth in this pleading. Accordingly, Xie asserts and pleads that Defendants are and should be found jointly and severally liable for Xie's damages and injuries, including those caused by others involved in the conspiracies to accomplish their illegal schemes, artifices and enterprises, and including those caused by others employed by Defendants or working with Defendants to cause the damages and injuries as set forth and alleged herein.

## VII. DAMAGES

68.     As a direct and proximate result of Defendants' conduct and actions, Xie has suffered damages and injuries, which are continuing in nature, in addition to the injuries and damages pled above, which are incorporated herein by reference. Xie suffered, suffers and will continue to suffer economic losses; loss of funds, monies, assets and property; loss of income/revenues and business/professional opportunities; loss of earnings/profits; mental anguish and emotional upheaval; diminishment in and loss of earnings opportunities and earning capacities, both past and future; damage to Xie's personal and professional reputations; damages resulting from the loss of the research grants; and other damages as will be proven at trial. Xie seeks the disgorgement and return of all grants and grant funding, monies, assets and property transferred, taken, converted, kept and/or otherwise seized from Xie and kept by Defendants, and financial

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 31

compensation for the value of such property and property rights.  Xie also seeks compensatory and consequential damages proximately flowing from the wrongful conduct and actions of Defendants.

69.     Xie has also incurred damages and injuries in the form of out-of-pocket costs and expenses to correct Defendants' unlawful and wrongful acts as asserted herein above including, but not limited to, legal and attorney's fees and litigation costs incurred to defend against the criminal charges; expert fees incurred to analyze the data at issue and to provide Xie's defense to the false criminal charges; legal fees and litigation costs to address the attempts to take or otherwise prevent the transfer of the research grants as well as the improper seizure and taking of Xie's other property and property rights; legal fees and litigation costs to address the ramifications to Xie's employment and cancer research positions, including any and all those lost as a proximate result of the wrongful actions of Defendants, including those with U of A as well as other professional opportunities that Xie was likely to obtain but for Defendants' wrongful actions and violations; and attorney's fees for such legal services in connection with preparation, trial, appeal and collection as may become necessary; prejudgment and post-judgment interest as allowed by law; and all other such incidental and consequential damages as are supported by the facts underlying Xie's claims in this litigation and to which Xie may be entitled for violations of 42 U.S.C. §1983 and for violations of his constitutional rights.

70.     Xie also seeks damages and compensation for the severe and substantial mental anguish, physical ramifications from the wrongful conduct set forth herein, emotional distress and compensatory damages, along with damage to his professional and personal reputations that resulted from the wrongful actions of Defendants.  Xie seeks damage and compensation for losses

to business relationships with other persons and companies; loss of business opportunities; and loss of professional and cancer research opportunities.  Accordingly, Xie seeks all reasonable general, special, incidental and consequential damages as are available, whether at law or in equity, and as shall be proven at trial.

71.     Because Defendants' conduct was intentional, fraudulent, deceptive, willful and malicious, or alternatively was reckless and grossly negligent, Xie further seek exemplary  or enhanced damages to the extent permitted by law.  If and to the extent such exemplary or enhanced damages are permitted, Xie seeks such damages in amounts to be determined by the jury but no less than are appropriate, necessary and proper to punish Defendants for their criminal, unlawful, fraudulent, deceptive and malicious conduct (or their grossly negligent and reckless conduct and actions) in furtherance of their violations of 42 U.S.C. §1983 and violations of Xie's constitutional rights; to deter Defendants from committing such unlawful, fraudulent, deceptive and malicious conduct (or alternatively grossly negligent conduct) in the future; and to serve as an example to others.

72.     Xie seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and also to avoid unjust enrichment to the Defendants.  Xie also seeks post judgment interest at the maximum rate allowed by law.

## VIII.  JURY DEMAND

73.   Xie asserts his right under Article I, Section 15 of the Texas Constitution and hereby demands a jury trial in accordance with TEX. R. CIV. P. 216.

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 33

WHEREFORE, premises considered, **KEPING XIE, M.D., PHD** respectfully requests that Defendants **THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER** and **THE UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT** be cited to appear and answer this Petition and that he be granted temporary and permanent injunctive relief, and other injunctive/equitable relief against Defendants as pled and requested herein.

Additionally, on final hearing, **KEPING XIE, M.D., PHD** further requests that he have and recover judgment against Defendants **THE UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER** and **THE UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT**, jointly and severally, as follows:

a. For all general, special, incidental and consequential damages to which Plaintiff may be entitled pursuant to this Petition or any amendment(s) thereto, including but not limited to all those damages set forth and pled herein;

b. Compensatory and consequential damages, attorneys' fees and litigation costs, and out of pocket expenses, including compensation for mental anguish, emotional upheaval, and damage to personal and professional reputations, relationships, contractual rights, and business/professional opportunities;

c. Enhanced, statutory, and exemplary/punitive damages, to the extent permitted by law;

d. Prejudgment interest at the highest rate permitted by law;

e. Post judgment interest at the highest rate permitted by law from the date of judgment until paid;

f. Costs of Court;

and all such other and further relief, at law or in equity, to which Plaintiff **KEPING XIE, M.D., PHD** may be justly entitled whether by this Petition or by any amendment hereto and which this Court deems proper.

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 34

Respectfully submitted,

KRENEK LAW OFFICES

By:   /s/ Eddie M. Krenek
      Eddie M. Krenek
      edkrenek@kreneklaw.com
      Texas Bar No. 11724980
      Tricia K. Thompson
      tkthompson@kreneklaw.com
      Texas Bar No. 24031324
      21555 Provincial Blvd.
      Katy, Texas 77450
      Telephone: (281) 578-7711
      Fax: (281) 578-8988

ATTORNEYS FOR PLAINTIFF
KEPING XIE, M.D. PhD

Keping Xie vs. MDA / UTPD
Original Petition & RFD

Page 35

# 3. CITATIONS ISSUED - RETURN OF SERVICE – 12/12/19

Receipt Number: 886907 EML
Tracking Number: 73700993

P-2

COPY OF PLEADING PROVIDED BY PLT

CAUSE NUMBER: 201985326

| | |
|---|---|
| PLAINTIFF: XIE, KEPING (M D) (PHD) | In the 113th Judicial |
| vs. | District Court of |
| DEFENDANT: UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER BY SERVING ITS PRESIDENT OR
ADMINISTRATIVE HEAD AS FOLLOWS: PETER WT PISTERS M D
1515 HOLCOMBE BOULEVARD
HOUSTON TX 77030
OR WHEREVER HE MAY BE FOUND

Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE.

This instrument was filed on November 27, 2019, in the above numbered and styled
cause on the docket in the above Judicial District Court of Harris County, Texas, in
the courthouse in the City of Houston, Texas. The instrument attached describes the
claim against you.

YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not
file a written answer with the District Clerk who issued this citation by 10:00 a.m.
on the Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you.

ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this
December 2, 2019.

*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: NELSON CUERO

Issued at request of:
Krenek, Eddie M.
21555 PROVINCIAL BLVD.
KATY, TX 77450
281-578-7711

Bar Number: 11724980

FILED
Marilyn Burgess
District Clerk

DEC 12 2019    12-12-19
Time: 2:38PM
Harris County, Texas
By: I. Malik
Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

Tracking Number: 73700993

CAUSE NUMBER: 201985326

PLAINTIFF: XIE, KEPING (M D) (PHD)   In the 113th

 vs.            Judicial District Court

DEFENDANT:   UNIVERSITY   OF   TEXAS   M   D  of Harris County, Texas
ANDERSON CANCER CENTER

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _2:15_ o'clock _P_ M., on the _9_ day of
_December_ , 20_19_ .
Executed at (address) _7007 Bertner Avenue Houston, TX 77030-3907_
in _Harris_ County
at _12:20_ o'clock _P_ M., on the _11_ day of
_December_ , 20_19_ , _Administrative head Holly O._
by delivering to _University of Texas M D Anderson Cancer Center_ defendant, _Rumbrough_
in person, a true copy of this          _c/o Peter WT Pisters M D_
Citation, together with the accompanying _1_ copy(ies) of the
_Plaintiffs Original_ Petition _and Request for Disclosure_
attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _11_ day of
_December_ , 20_19_ .

FEE:  $ _____    _Derald D. Jackson   Process Server_
           _____ of _Harris County_

County, Texas
_Derald D. Jackson Sc 6604  8-31-20 BP_  By: _____
   Affiant          Deputy
On this day, _Derald D. Jackson_ , known to me to be
the person whose signature
appears on the foregoing return, personally appeared.  After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited
on the return.

SWORN TO AND SUBSCRIBED BEFORE ME on this _12_ of
_December_ , 20 _19_

        _Ywanda D. Harkless_
        Notary Public

YWANDA D HARKLESS
126368278
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 23, 2023

P-2

Receipt Number: 886907 EML
Tracking Number: 73700994

COPY OF PLEADING PROVIDED BY PLT

CAUSE NUMBER: 201985326

| | |
|---|---|
| PLAINTIFF: XIE, KEPING (M D) (PHD) | In the 113th Judicial |
| vs. | District Court of |
| DEFENDANT: UNIVERSITY OF TEXAS M D ANDERSON CANCER CENTER | Harris County, Texas |

CITATION

THE STATE OF TEXAS
County of Harris

TO: UNIVERSITY OF TEXAS AT HOUSTON POLICE DEPARTMENT BY SERVING ITS CHIEF OF POLICE AND CHIEF SECURITY OFFICER OR ADMINISTRATIVE HEAD AS FOLLOWS: WILLIAM ADCOX AT THE UNIVERSARY OF TEXAS POLICE AT HOUSTON

7777 KNIGHT ROAD

HOUSTON TX 77054

OR WHEREVER HE MAY BE FOUND

    Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE.

This instrument was filed on November 27, 2019, in the above numbered and styled cause on the docket in the above Judicial District Court of Harris County, Texas, in the courthouse in the City of Houston, Texas. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

    ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this December 2, 2019.

*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: NELSON CUERO

Issued at request of:
Krenek, Eddie M.
21555 PROVINCIAL BLVD.
KATY, TX 77450
281-578-7711

Bar Number: 11724980

FILED
Marilyn Burgess
District Clerk

DEC 1 2 2019   12-12-19

Time: 2:38 pm

Harris County, Texas

By I. Collins
                   Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

Tracking Number: 73700994

CAUSE NUMBER: 201985326

| | |
|---|---|
| PLAINTIFF: XIE, KEPING (M D) (PHD) | In the 113th |
| vs. | Judicial District Court |
| DEFENDANT:  UNIVERSITY  OF  TEXAS  M  D | of Harris County, Texas |
| ANDERSON CANCER CENTER | |

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at _9:15_ o'clock _P_. M., on the _9_ day of _December_, 20_19_

Executed at (address) _7777 Knight Road Houston, TR 77054_

in _Harris_ County

at _11:15_ o'clock _A_. M., on the _11_ day of _December_ 20 _19_

by delivering to _University of Texas At Houston Police Department Chief of Police And Chief Security_ defendant, _which all_

in person, a true copy of this _Administrative head As Follows: William Falcox c/o Charles G. Dunn_

Citation, together with the accompanying _1_ copy(ies) of the

_Plaintiff's Original_ Petition _And Request for Disclosure_

attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _11_ day of _December_, 20 _19_.

FEE:  $ _____

_Denald D. Jackson_  Process Server

of _Harris County_

_Denald D. Jackson  SCI 869  8-31-20 PP_

Affiant

County, Texas

By: _____

Deputy

On this day, _Denald D Jackson_____, known to me to be
the person whose signature
appears on the foregoing return, personally appeared.  After being by me duly sworn,
he/she stated that this citation was executed by him/her in the exact manner recited
on the return.

SWORN  TO  AND  SUBSCRIBED  BEFORE  ME  on  this  _19_  of
_December_____, 20 _19_

_Ywanda D Harkless_

Notary Public

YWANDA D HARKLESS
126368278
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
MARCH 23, 2023

# 4. DEFENDANTS' ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

12/23/2019 2:42 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 39476064
By: SASHA PRINCE
Filed: 12/23/2019 2:42 PM

CAUSE NO. 2015-85326

| | | |
|---|---|---|
| KEPING XIE, M.D., PHD, | § | IN THE DISTRICT COURT |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | HARRIS COUNTY, TEXAS |
| THE UNIVERSITY OF TEXAS MD | § | |
| ANDERSON CANCER CENTER; and | § | |
| THE UNIVERSITY OF TEXAS AT | § | |
| HOUSTON POLICE DEPARTMENT, | § | |
| *Defendants*. | § | 113TH JUDICIAL DISTRICT |

---

## DEFENDANTS' ORIGINAL ANSWER AND AFFIRMATIVE DEFENSES

---

Defendants The University of Texas MD Anderson Cancer Center and The University of Texas at Houston Police Department, (collectively, "Defendants"), file this Answer to Plaintiff's Original Petition. Defendants respectfully show the Court the following:

## I.   GENERAL DENIAL

Defendants hereby deny each and every, all and singular, allegation of Plaintiff's Original Petition and require strict proof thereof.

## II.   AFFIRMATIVE DEFENSES

Pleading further, Defendants assert that they are entitled to the following affirmative defenses:

1.    Defendants assert all applicable immunities to Plaintiff's claims, including but not limited to their entitlement to sovereign immunity, qualified immunity, and to caps and limits on damages or other demanded relief.

2.    Defendants assert the defense of limitations to the extent applicable to any cause of action asserted by Plaintiff.

---

3.      Plaintiff failed to exhaust his administrative remedies and meet all statutory prerequisites prior to filing this lawsuit.

4.      Any challenged action, practice, or policy and its impact on Plaintiff—if any—was reasonably necessary to business and/or government operations.

5.      Plaintiff consented to the actions he complains of.

6.      The actions Plaintiff complains of were the result of Plaintiff's own conduct, or the conduct of his agents, representatives, or consultants.

7.      Defendants at all times relevant acted in good faith and without malice, willfulness, or intent with respect to Plaintiff.

8.      Defendants assert that—to the extent applicable and without admitting that Plaintiff is entitled to any damages—Plaintiff has failed to mitigate his damages, if any.

9.      Plaintiff's own acts or omissions caused or contributed to his injury, if any.

10.     Plaintiff lacks standing to bring his lawsuit against Defendants.

11.     Plaintiff has no adequate remedy at law for the allegations he brings.

12.     Plaintiff's Petition fails to state any claim upon which relief may be granted.

13.     Defendants reserve the right to add affirmative defenses as they become known.

### III.   REQUEST FOR DISCLOSURE TO PLAINTIFF

Pursuant to TEX. R. CIV. P. 194, Defendants requests that Plaintiff fully disclose, within thirty (30) days of service of this request, all the information and/or materials described in Tex. R. Civ. P. 194.2(a) through (*l*).  Please note the provisions of Rule 194.4.

## IV.   **PRAYER**

Defendants pray that Plaintiff take nothing by his suit, and that all costs be taxed and adjudged against Plaintiff, and that Defendants be granted such other and further relief to which they justly may be entitled.

Date: December 23, 2019                    Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief - General Litigation Division


*/s/ Chad Ennis*
**CHAD ENNIS**
Texas Bar No. 24045834
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
FAX: (512) 320-0667
Chad.Ennis@oag.texas.gov
***Attorney for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served on the following this 23rd December 2019, in accordance with Rule 21a of the Texas Rules of Civil Procedure, electronically through the electronic filing manager to the following:

Eddie M. Krenek
Tricia K. Thompson
Krenek Law Offices
21555 Provincial Blvd.
Katy, Texas 77540
281-578-7711
281-578-8988
edkrenek@kreneklaw.com
tkthompson@kreneklaw.com

*/s/ Chade Ennis*
CHAD ENNIS
Assistant Attorney General