United States District Court
Southern District of Texas
**ENTERED**
October 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Keping Xie, M.D., PhD | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-19-5014 |
| | § | |
| University of Texas M.D. Anderson | § | |
| Cancer Center, University of Texas | § | |
| at Houston Police Department, | § | |
| Charles Dunn, Richard Gonzalez, | § | |
| Steve Haydon, and Vicki King, | § | |
| Defendants. | § | |

# Report and Recommendation

Keping Xie, a professor and researcher at University of Texas M.D. Anderson Cancer Center (MDA), was under investigation for fraud. In the course of that query, his computers were seized and searched for evidence. Child pornography was discovered. Xie was charged with possession of child pornography, but a grand jury in Harris County declined to indict him.

Xie sued Defendants in state court under 42 U.S.C. § 1983 (Section 1983) alleging federal constitutional violations and claims under state law. Defendants removed the action and have moved to dismiss all claims against all Defendants. (D.E. 19.) The court recommends that the motion be granted.

## 1. Background

According to Xie's First Amended Complaint (FAC) (D.E. 7), Xie was employed at MDA for decades, most recently as a professor and cancer researcher. (FAC at ¶ 15.) Xie alleges he was instrumental in securing grants for research conducted at MDA. (FAC at ¶¶ 17-18.)

In January 2018, Xie was performing research pursuant to four grants that totaled more than $7 million. (FAC at ¶ 18.)

On an ongoing basis, Xie reported "research improprieties committed by others at MDA . . . [to] law enforcement investigative agencies and/or to the agencies involved in awarding and/or administering grants." (FAC at ¶ 21.) "MDA attempted to cover up the improprieties" and later to "punish" Xie for making the reports. (FAC at ¶ 23.) Xie began considering research opportunities at other institutions and anticipated that, as the principal investigator on the grants he secured, he would be able to transfer the grants to a new institution if he accepted another position. (FAC at ¶¶ 18, 22, 31, 33.)

MDA knew that grants "always or almost always" transferred with a principal investigator who moved to another institution. (FAC at ¶ 22.) According to the amended complaint, MDA contacted the National Institutes of Health (NIH), which awarded and funded the grants, to propose individuals to replace Xie as principal investigator in an effort to retain the grants, but NIH found the proposed individuals to be "inappropriate and unqualified." (FAC at ¶ 35.) "NIH supported Xie in his transfer efforts, making clear to MDA that NIH preferred the grants to remain with Xie as principal investigator and the person most knowledgeable and capable of properly performing the research and carrying out the grant terms . . . ." (FAC at ¶ 33.) According to the amended complaint, NIH's position prompted MDA to concoct a fraudulent scheme to "malign, smear, undermine, ruin and ultimately destroy Xie" in order to avoid the transfer of the "lucrative" grants to another institution. (FAC at ¶¶ 35-36.) The scheme involved instigating criminal investigations. (FAC at ¶¶ 46, 68.)

On January 26, 2018, Richard Gonzalez, a peace officer for University of Texas at Houston Police Department (UTPD), applied for a search warrant (SW1) (D.E. 19-1 at Ex. 1-A) based on information reported to UTPD by MDA. (SW1 at 3-9.) In his affidavit, Gonzalez explained that MDA Information Security performed an internal analysis of MDA's network on January 16, 2018, and detected data

showing that Xie had altered restaurant receipts for which he sought reimbursement. (SW1 at 6.) Based on MDA's report of Xie's alteration of the restaurant receipt, UTPD began an investigation into whether Xie had tampered with a governmental record. (SW1 at 6-8.)

According to Gonzalez's affidavit in support of the search warrant, the investigation revealed that Xie, under his unique credentials and password, "used an image alteration program to alter a receipt" for a dinner party in order to claim reimbursement from state funds to which he was entitled. (SW1 at 6-7.) Gonzalez affirmed that he discovered that "the billing images were saved under a unique file path that was assigned to multiple drives, including external hard drives" that were personal devices, not issued by MDA. (SW1 at 8.)

Gonzalez stated in his affidavit that, based on training and experience, "a Suspect may store or keep external hard drives, cellular phone, or other storage media either in vehicles or a personal residence." (SW1 at 8.) He therefore sought a search warrant for Xie's home, offices, and vehicles to seize all digital media storage devices, papers or writings containing information on access to the devices, and writings or media containing evidence of tampering with a governmental record and/or fraud. (SW1 at 3-4, 8.)

On January 26, 2018, at 1:04 a.m., a judge signed the search warrant. (SW1 at 4.) The warrant authorized the offsite forensic analysis of all electronic and media storage devices that were seized. *Id.* On the same day the warrant was signed, it was executed. (FAC at ¶ 27; SW1 at 4.)

Xie alleges that Charles Dunn, a UTPD inspector, who falsely identified himself to Xie as a representative of the Federal Bureau of Investigation (FBI), was present at Xie's residence all day. (FAC at ¶¶ 25-26.) According to Xie:

> [t]hroughout the day, Dunn continued to threaten Xie's freedom and liberties if Xie did not acquiesce to Dunn's demands, including his demand that Xie voluntarily allow Dunn to enter Xie's house. Despite Dunn's threats, Xie continued to refuse Dunn's demands to be allowed to enter upon or go into Xie's home and residential premises. At no

3

> point did Xie consent to Dunn[ś] searches. Yet, Xie's lack of consent or permission did not stop nor deter Dunn. He used force and nonetheless entered upon Xie's premises. There, Dunn began to take note of what he saw and was able to "inventory" items based on his illegal and baseless search of Xie's house, as Dunn knew he did not have proper authority or basis for entering into Xie's residence.

(FAC at ¶ 26.) Dunn left after "a lengthy period of time" only to return "some hours later" with others "most likely with UTPD" to execute the warrant. (FAC at ¶¶ 26-27.) Pursuant to the authorization of the search warrant, the officers seized more than "88 data drives, computers, phones, data storage devices, and other similar items," including items belonging to members of Xie's family. (FAC at ¶ 28.)

Immediately thereafter, MDA placed Xie on administrative leave and prohibited his return to MDA property and his use of MDA communications systems. (FAC at ¶ 30.) Xie retired from MDA and joined the faculty at the University of Arizona College of Medicine at Phoenix (U of A). (FAC at ¶¶ 31-32.) According to Xie, "[a]rrangements were made to bring over research staff from MDA, and to transfer Xie's four grants to U of A." (FAC at ¶ 32.)

On June 18, 2018, Gonzalez applied for a second search warrant. (SW2) (D.E. 19-1 at Ex. 1-B) According to the affidavit in support of the second search warrant, in March 2018, the devices seized pursuant to the first warrant were being examined by a forensic firm to find evidence of tampering with a governmental record and fraud. (SW2 at 21.) While performing the examination, the examiner saw on one device "several images that appeared to be images of pre-pubescent females engaged in sexual activity." *Id.* The examiner reported that, "through his training and experience, [he] suspected the images to be child pornography." *Id.* Gonzalez instructed the forensic expert to stop the examinations. *Id.*

Gonzalez sent the suspect images' digital identifiers, known as hash values,[1] to the National Center for Missing and Exploited Children (NCMEC) for comparison to known child pornography. *Id.* "One image came back as recognized child pornography, an 'identified child' and six recognized and four unrecognized, but possible images." *Id.* After consulting with Houston Police Department Internet Crimes Against Children, Gonzalez initiated the transfer of the child pornography investigation to that unit. *Id.*

Based on the confirmation from NCMEC that the images included child pornography, Gonzalez sought the second search warrant in June 2018 to authorize forensic examinations of the previously seized devices to determine whether they contained more child pornography and other evidence of related criminal activity. (SW2 at 10-23.) In his affidavit, Gonzalez stated that, in the fraud investigation, evidence was obtained "using both a search warrant and a consent search." (SW2 at 20.) A district court judge signed the warrant. (SW2 at 16.)

On August 20, 2018, a Harris County magistrate issued a warrant for Xie's arrest (AW) (D.E. 19-2 at Ex. 2) on the felony charge of possession of child pornography. (FAC at ¶ 45; AW at 1.) In the supporting affidavit, Gonzalez described five images discovered on Xie's digital media through forensic examination and confirmed by NCMEC to include child pornography. (AW at 3.)

On August 24, 2018, U of A placed Xie on leave. (FAC at ¶ 46.) Despite Xie's efforts to reassure U of A that the charges were false, U of A terminated Xie's employment on October 12, 2018. *Id.* On November 28, 2019, a grand jury returned a no bill on the felony charge of possession of child pornography, and the case was dismissed. (FAC at ¶ 55.) Thereafter, Xie unsuccessfully sought the return of the seized personal property. (FAC at ¶ 56.)

---

[1] "Hash values are short, distinctive identifiers that enable computer users to quickly compare the contents of one file to another." *United States v. Reddick*, 900 F.3d 636 (5th Cir. 2018).

Xie filed this lawsuit, alleging that MDA, UTPD, Dunn, Gonzalez, Steve Haydon, and Vicki King violated his constitutional rights by pursuing a "baseless and malicious criminal prosecution, false arrest, false detainer and improper seizure of property." (FAC at ¶ 1.) Xie asserted claims under Section 1983 for violations of his Fourth, Fifth, and Fourteenth Amendment rights, as well as for negligence. (FAC at ¶¶ 61-82.) He also alleged that Defendants violated article 1, section 17 of the Texas Constitution and entered a conspiracy to violate his constitutional rights. (FAC at ¶¶ 83-84). Xie requested both injunctive relief and monetary damages. (FAC at ¶¶ 85, 88-91.)

Xie's amended complaint is rife with conclusory accusations wholly lacking in factual support. Of particular note is the absence of any facts explaining specific actions taken by Haydon or King. Although Xie stated his belief that Haydon was involved in "overseeing and making decisions about Xie's grants" and that Haydon "orchestrated certain of the actions[,]" Xie provided no factual detail as to Haydon's alleged wrongdoing. (FAC at ¶ 36.) Xie grouped King with the other individual defendants throughout the complaint but failed to allege a single specific action that she took. Accordingly, the court recommends that all claims against Haydon and King be dismissed.

Defendants moved to dismiss Xie's claims in their entirety arguing that Xie lacks standing, that sovereign immunity bars the Section 1983 claims, that Dunn, Gonzalez, Haydon, and King are entitled to qualified immunity, and that Xie failed to state a claim on any of the causes of action pleaded. (D.E. 19.) Attached to the motion to dismiss are five exhibits, including copies of the search warrants and arrest warrant. (D.E. 19-1 to 19-5.) Xie agrees that the search warrants and arrest warrant, including the affidavits in support of each, are part of the pleadings but objects to the court's consideration of the other exhibits. (D.E. 24 at 11-12.) Xie filed a response and a supplemental response, attaching a total of seventeen exhibits. (D.E.

24, 29, 30.) Defendants filed a reply with an additional twelve exhibits. (D.E. 32). Defendants' motion to dismiss is ripe for decision.

## 2. Standards of Review

### A. Rule 12(b)(1) dismissal for lack of subject matter jurisdiction

A court may dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Subject matter jurisdiction "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting U.S. Const. art. III, § 2.) Constitutional "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy" and is an "essential component[] of federal subject matter jurisdiction." *Id.*; *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004). The party invoking subject matter jurisdiction has the burden to prove standing. *Spokeo, Inc.*, 136 S. Ct. at 1547.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6) dismissal for failure to state a claim

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Generally, the court is constrained to the "four corners of the complaint" to determine whether the plaintiff has stated a claim. *Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff" and "drawing all reasonable inferences in that party's favor." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007).

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

Conclusory allegations disentitle a plaintiff to the presumption of truth. *Iqbal*, 556 U.S. at 681. It follows that the court, in reviewing the plaintiff's complaint, may neither "accept conclusory allegations" nor "strain to find inferences favorable to the plaintiff[]." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Neither "unsupported conclusions . . . of mixed fact and law" nor "unwarranted deductions" are acceptable. *Southland Sec.*, 365 F.3d at 361; *Stanton v. United States*, 434 F.2d 1273, 1276 (5th Cir. 1970).

### 3. Analysis

#### A. Whether the court should consider extra-pleading materials

The court has discretion to consider "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Such documents are considered part of the pleadings. S*ee Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). If a conflict exists between the allegations in the complaint and the contents of attached documents, the documents control. *United States ex rel. Riley v. St. Luke's Epis. Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). A Rule 12(b)(6) motion must be treated as a

motion for summary judgment if matters outside the pleadings are presented and considered by the court. Fed. R. Civ. P. 12(d).

The parties submitted numerous exhibits with their briefs. Xie objected to the documents that Defendants submitted with their motion except for the search warrants and the arrest warrant. The parties agree that the two search warrants and the arrest warrant attached to the motion to dismiss, along with the corresponding affidavits, are central to Xie's claims and are referred to in the amended complaint. The court considers these documents to be part of the pleadings. The court finds all other exhibits to be extra-pleading materials and has not considered any of them in its analysis. *See Porter v. Shearson Lehman Bros. Inc.,* 802 F. Supp. 41, 52 (S.D. Tex. 1992) (stating that the court has "complete discretion" in deciding whether to rely on any material beyond the pleadings).

Accordingly, the court sustains Xie's objections to the court's consideration of the other exhibits attached to the motion to dismiss and further declines to consider the exhibits attached to Xie's response and supplemental response or those attached to Defendants' reply.

### B. Whether Xie has standing

"[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Rather, it "turns on the nature and source of the claim asserted." *Id.* The elements of constitutional standing are that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.*, 136 S. Ct. at 1547.

Among other claims of injury and requests for damages, Xie alleged that Dunn, Gonzalez, Haydon, and King violated his constitutional rights, causing both damage to his professional reputation and U of A's withdrawal of an offer of employment. Those alleged injuries are fairly traceable to the constitutional violations

alleged and could be redressed through an award of damages. Xie has satisfied his burden to establish standing.

The court recommends that Defendants' Rule 12(b)(1) motion be denied.

### C. Whether Defendants are entitled to state sovereign immunity for Section 1983 claims

Claims brought pursuant to Section 1983 against states are barred by the Eleventh Amendment. *See Duncan v. Univ. of Tex. Health Sci. Ctr. at Houston*, 469 F. App'x 364, 366-67 (5th Cir. 2012). State agencies and state officials in their official capacities are entitled to state sovereign immunity, but state officials in their individual capacities sued for money are not. *See New Orleans Towing Ass'n, Inc. v. Foster*, 248 F.3d 1143, 2001 WL 185033, at *3 (5th Cir. 2001). By removing this case, MDA and UTPD waived the right to object to federal jurisdiction based on state sovereign immunity. *See Meyers ex rel Benzing v. Texas*, 454 F.3d 503, 504 (5th 2006).

Irrespective of removal, Xie asserted the 1983 claims only against Dunn, Gonzalez, Haydon, and King in their individual capacities. (FAC at ¶¶ 8-11, 62; D.E. 24 at 23, 24.) Accordingly, state sovereign immunity does not apply to Xie's Section 1983 claims.

### D. Whether Dunn, Gonzalez, Haydon, and King are entitled to qualified immunity

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Where qualified immunity is asserted as a defense to a claim brought under Section 1983, "the plaintiff bears the burden of pleading facts that demonstrate liability and defeat immunity." *Shaw v. Villanueva*, 918 F.3d 414, 416-17 (5th Cir. 2019). To meet this burden, "[t]he plaintiff must show (1) that the official violated a statutory or constitutional right[] and (2) that the right was clearly established at the time of the challenged conduct." *Id.* (internal quotation marks omitted).

Dunn, Gonzalez, Haydon, and King argue that Xie failed to plead facts detailing each one's actions in violation of Xie's constitutional rights and that he "offer[ed] only speculative, conclusory allegations devoid of factual support." (D.E. 19 at 12.) The First Amended Complaint, read broadly, identifies malicious criminal prosecution, illegal search and seizure, false arrest, due process violations, taking of property for public use, and negligence as bases for his Section 1983 claims.

### i. Malicious Prosecution

The Fifth Circuit does not recognize an independent federal cause of action for malicious prosecution. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009)(citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003)). Violations of constitutional rights occurring in relation to an alleged malicious prosecution can be redressed only pursuant to specific constitutional protections. *See id.*

In Xie's response, he explains that he did not "allege that a malicious prosecution claim in and of itself equates with a [Section] 1983 claim but rather that Defendants violated numerous constitutional protections afforded Xie based on facts consistent with malicious prosecution, false arrest, unlawful search and seizure of personal and professional property, and related acts prohibited under [Section] 1983 and protected by law[.]" (D.E. 24 at 9-10.) Based on that concession, the court turns to Xie's allegations that Dunn, Gonzalez, Haydon, and King violated his Fourth Amendment rights to avoid illegal search and seizure and false arrest. *Cf. Albright v. Oliver*, 510 U.S. 266, 274 (1994) (acknowledging that the Fourth Amendment may be implicated in criminal prosecutions).

### ii. Search and Seizure

The Fourth Amendment protects against unreasonable searches and seizures of "persons, houses, papers and effects." U.S. Const. amend. IV. An officer can be held liable for an unconstitutional search if he obtained a warrant by swearing to false information in the supporting affidavit, "provided that: (1) the affiant knew the information was false or acted with reckless disregard for the truth;

and (2) the warrant would not establish probable cause without the false information." *Thomas v. Williams*, 719 F. App'x 346, 350 (5th Cir. 2018) (internal alterations omitted) (discussing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

In January 2018, MDA conducted a security analysis of its network during which MDA discovered evidence that Xie tampered with a receipt submitted for reimbursement. MDA turned over the evidence to UTPD. Gonzalez obtained a warrant to search Xie's offices, home, and vehicles based on the evidence obtained by MDA and further investigation. That first search warrant authorized the seizure of Xie's digital media devices and writings containing either access information or evidence of tampering with a governmental record and/or fraud. It further authorized the forensic examination of all devices for evidence of tampering or fraud. During the forensic examination, child pornography was discovered on one device and confirmed by NCMEC, which led to a separate investigation and a second search warrant. The second search warrant allowed the forensic examination of all the previously seized digital media devices in search of more evidence of Xie's possession of child pornography.

Xie argues that the first search warrant was overbroad because it allowed seizure of communications with his attorney, evidence of MDA's improprieties, and digital media devices of family members. An officer who seeks or executes a search warrant cannot be held liable under Section 1983 unless no reasonably competent officer would believe it should have issued. *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). That is, the warrant would have to be virtually devoid of facts and circumstances indicating the existence of probable cause. Here, there is no allegation that the facts in the affidavit are false. Moreover, the facts in the affidavit demonstrate that evidence of crime was being stored on Xie's personal devices, which would naturally be located in his home, vehicle and office. The warrant was limited to allow seizure of devices in locations where Xie would have stored them. It was also limited in scope to allow search and seizure of "any writings or media which may contain evidence of fraud and /

or tampering with a government record." (SW1 at 4.) Xie has failed to state a claim against Gonzalez based on overbreadth of the first search warrant.

Xie's argument that the search of his offices, residence, and vehicles was not consensual is not supported by the facts in the amended complaint or by the first search warrant. According to the amended complaint, Dunn entered Xie's residence without Xie's consent. Dunn left and returned on the same day with other officers and a search warrant. The amended complaint offered only conclusory allegations about Dunn's actions while at the residence. Xie does not say where Dunn searched or what he seized, if anything. Xie's factual allegations are insufficient to state a claim that Dunn conducted a non-consensual search or committed any other constitutional impropriety while at Xie's residence.

Xie further alleged that Dunn communicated information acquired during the allegedly non-consensual search to Gonzalez for inclusion in the warrant application. Xie points to no factual support for that allegation. He offers no details as to what information Dunn provided or how and when it was communicated. Nothing in the warrant application refers to observations made at Xie's residence.

More importantly, the factual timeline does not support the conclusion that Dunn's presence at Xie's residence occurred prior to the issuance of the first search warrant. On its face, the first warrant establishes that it was signed at 1:04 a.m. It is undisputed that the warrant was executed on the day that it was issued and that Dunn was at Xie's residence that day prior to the execution of the warrant. Xie did not allege at what time Dunn arrived to the residence or any facts to support the conclusion that Dunn entered the residence before the warrant issued. Thus, whether Xie consented to Dunn's entry is irrelevant because the facts show that the warrant was obtained prior to Dunn's entry. What Dunn saw or seized in Xie's home could not have been described in the warrant application.

As to the second search of the seized devices, Xie argued that Gonzalez falsely characterized the earlier search of Xie's residence as

13

consensual. Assuming that the statement was false, Xie can hold Gonzalez liable only on facts that Gonzalez knew that consent was not given or if he acted with reckless disregard for whether consent was given and that the second warrant would not have issued without that statement. *See Thomas*, 719 F. App'x at 350. Xie pleaded no facts to support that Gonzalez either knew of a lack of consent or disregarded its absence. Xie must also show that, without the allegedly false statement, the warrant lacked probable cause. That is not the case here. In the supporting affidavit, Gonzalez asseverated that child pornography as confirmed by NCMEC was discovered on Xie's digital media. That alone is enough to establish probable cause to search Xie's devices for child pornography. *See United States v. Reddick*, 900 F.3d 636, 639 (2018)(quoting *United States v. Larman*, 547 F. App'x 475, 477 (5th Cir. 2013)("NCMEC hash value comparison 'allows law enforcement to identify child pornography with almost absolute certainty,' since hash values are 'specific to the makeup of a particular image's data.'").

### iii. False Arrest

To prevail on a claim of false arrest, the plaintiff must demonstrate that the arrest lacked probable cause. *Evans v. City of Meridian Miss.*, 630 F. App'x 312, 315 (5th Cir. 2015) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)). An officer is entitled to qualified immunity unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted). When an "independent intermediary such as a magistrate" reviews the facts supporting the arrest and finds probable cause, that "decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010). Only if the "deliberations of that intermediary were in some way tainted by the actions of the defendant," such as by withholding relevant information, would causation remain intact. *Id.*

Without providing any factual detail in the amended complaint, Xie claimed that his arrest lacked probable cause and that an unreasonable search was conducted when he was arrested. In his response to the motion to dismiss, Xie offers nothing more than the speculation that Dunn, Gonzalez, Haydon, and King knew that the prosecution for child pornography lacked probable cause.

The application for the arrest warrant stated probable cause by describing five images found on Xie's digital media devices that were confirmed by NCMEC to include child pornography. A judge reviewed the application and determined that it was supported by probable cause. Xie fails to overcome qualified immunity because he points to no facts that show the warrant application was without probable cause or that Gonzalez withheld information or otherwise tainted the warrant process.

As Xie provides no factual detail about his arrest or the search incident to arrest, he fails to identify any constitutional harm that he suffered based on the manner in which the arrest warrant was executed.

### iv. Procedural Due Process

A deprivation of property is not a violation of the Constitution unless it "occurred without due process of law." *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 672 (5th Cir. 2007). "Property interests are not created by the Constitution but are created and their dimensions are defined by an independent source such as contract or state law." *Maurer v. Indep. Town*, 870 F.3d 380, 385 (5th Cir. 2017)(internal quotation marks omitted)(quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)).

Xie alleged that his "freedoms and liberties were abridged, trampled upon and taken without due process using false and fabricated facts, and done intentionally and with malice[]" and that he was deprived of research grants and personal property items. (FAC at ¶¶ 24, 59.) Xie articulates no illegal abridgement of his liberty and provides no details of his arrest. As discussed in section iii on false arrest, the warrant for his arrest was constitutionally sound. Xie

15

cannot pursue a procedural due process claim "to challenge conduct specifically addressed by the Fourth Amendment." *See Lucky Tunes #3, L.L.C. v. Smith*, 812 F. App'x 176, 183 (5th Cir. 2020) (citing *Cuadra*, 626 F.3d 814).

For the same reason, Xie's procedural due process claim challenging the seizure of his personal property fails. To the extent that Xie seeks return of that seized property, he fails to explain what process he is due that has been denied. As to the research grants, Xie did not identify the independent source that clearly gave rise to a property right and failed to detail what process he was due or how the actions of any named defendant played a role in decisions about the grants.

### v. Taking of Property for Public Use

The Fifth Amendment protects against the taking of private property "for public use[] without just compensation." U.S. Const. amend. V. It applies to the states through the Fourteenth Amendment. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005) (citing *Chi., B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)). The seizure of property pursuant to criminal laws is not a taking. *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006)(citing *Bennis v. Michigan,* 516 U.S. 442, 452–53 (1996)).

Xie argued that his property was illegally seized because Dunn, Gonzalez, Haydon, and King were not engaged in a legitimate criminal investigation. Therefore, Xie argued, it was a taking in violation of the Fifth Amendment. As the court explained in the preceding subsections, Xie's criminal investigation complied with federal law. Thus, Xie's argument fails.

### v. Other Constitutional Claims

In his complaint, Xie briefly mentioned violations of his rights to equal protection under the law and substantive due process but included no factual allegations in support of either claim. Xie also alleged that Defendants violated his "right to be free from police harassment and intimidation as provided for in the Fifth, Sixth, and Fourteenth Amendments of the Constitution of the United States."

(FAC at ¶ 78.) Xie did not explain how the cited constitutional amendments give rise to that right or detail specific facts that support the claim.

Xie made various allegations that, even if substantiated, do not rise to the level of constitutional harm. These include allegations that Defendants searched for a prosecutor who was willing to take the case against Xie, that MDA leaked rumors to other institutions about Xie's involvement in espionage and child pornography, and that Dunn falsely identified himself as representing the FBI.

### vi. Negligence

Only violations of federal statutory or constitutional rights give rise to liability under Section 1983. *See Reichle*, 566 U.S. at 664 (stating that a government official is protected by qualified immunity unless he violated a federal statutory or constitutional right); *Castellano*, 352 F.3d at 942 (stating that a Section 1983 claim "must rest upon a denial of rights secured under federal and not state law").

Xie's Section 1983 negligence claim is not based on any federal statutory or constitutional right. Rather, Xie alleged that "Defendants committed violations by failing to implement and put in place adequate and much needed policies, procedures, protocols and guidelines, and to properly monitor and supervise personnel engaged in carrying out the actions in furtherance of such policies, procedures, protocols and guidelines." (FAC at ¶ 80.) Xie listed, in conclusory fashion, numerous types of policies that allegedly were not implemented, as well as failures in training and supervision. (FAC at ¶ 81.)

To the extent that Xie intended to impute liability for Dunn, Gonzalez, Haydon, and King's alleged unconstitutional conduct to MDA and UTPD, he was unsuccessful on two fronts. First, he conceded in both the amended complaint and his response that he was not asserting Section 1983 claims against MDA and UTPD. Second, as explained above, he failed to state any violation of federal statutory or constitutional law by Dunn, Gonzalez, Haydon, and King for which MDA and UTPD could be held liable.

### E. Whether Xie stated a Texas constitutional takings claim

The Texas Constitution states that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." Tex. Const. art. 1, § 17. The elements of a state takings claim are: "(1) the State intentionally performed certain acts, (2) that resulted in a taking of property, (3) for public use." *Smith v. Lutz*, 149 S.W.3d 752, 760 (Tex. App.–Austin 2004, no pet.) (internal quotation marks omitted) (citing *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)). As a matter of law, the court determines whether a particular set of facts constitutes a taking. *Id.* at 760 (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 936 (Tex. 1998)).

Xie alleged that "Defendants violated the Takings Clause by improperly and illegally taking . . . Xie's rights in and to the research grants[] and by improperly and illegally taking . . . Xie's rights in and to the property items illegally seized[.]" (FAC ¶ 83.) Xie fails to state a takings claim for either the research grants or the property items.

"To meet the first prong [of a state takings claim], the State must have the requisite intent to be acting under its eminent domain powers, rather than merely withholding property or money in a contract dispute." *Smith*, 149 S.W.3d at 760. (citing *Gen. Servs. Comm'n*, 39 S.W.3d at 598-99). "The State, in acting within a color of right to take or withhold property in a contractual situation, is acting akin to a private citizen and not under any sovereign powers." *Id.* (quoting *Gen. Servs. Comm'n*, 39 S.W.3d at 599).

When a dispute arose between MDA and Xie about the transfer of the grants, MDA negotiated with NIH, as would any private entity, to replace Xie as principal investigator so that it could remain as the hosting institution. The actions taken by MDA, as alleged, are no different than the actions taken by a private entity in a typical contract dispute. *See MBP Corp. v. Bd. of Trs. of Galveston Wharves*, 297 S.W.3d 483, 490 (Tex. App.–Houston [14th Dist.] 2009, no pet.) (stating that the State may lack the requisite intent to take under its eminent domain authority even if no contract exists or the State

18

misinterprets the contract); *Smith*, 149 S.W.3d at 761 (finding that a university retaining software pursuant to a contract dispute did not have the requisite intent for eminent domain). MDA was acting under the color of right "akin to a private citizen" in its effort to continue the hosting the grants, not under its power of eminent domain. *See MBP Corp.*, 297 S.W.3d at 491 ("[B]ecause a private landowner could have acted as the Wharves did, we conclude MBP has not shown the Wharves' requisite intent to act under its sovereign powers.").

Other than MDA's interactions with NIH discussed above, no defendant is alleged to have any contact whatsoever with NIH, the undisputed decision-maker for grant placement. Xie's theory is that, when MDA and NIH could not reach an agreement, MDA, with assistance from the other defendants, began a campaign to ruin Xie's reputation through fraudulent criminal investigations with the goal of thwarting his efforts to transfer the grants to another institution. Xie points to no facts in support of an inference that the criminal investigations were motivated by anything other than the discovery of suspected criminal activity.

Xie's theory is wholly implausible. Separating facts from speculation, MDA reported suspected criminal activity to UTPD, which began an investigation. That investigation uncovered additional suspected criminal activity. As discussed above, the investigations complied with all required procedures and protections and led to the procurement of search warrants authorizing the seizure of Xie's digital media devices and other personal property. The facts do not lend themselves to a plausible inference that the actions taken against Xie were motivated by the State's intent to deprive Xie of his personal property. *See Twombly*, 550 U.S. at 570 (requiring that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face"). Rather, the facts lend themselves to the only facially plausible conclusion that MDA reported a crime and UTPD took appropriate actions in its investigation. *See id.*

### F. Whether immunity is waived for claims under state law

Sovereign immunity prevents lawsuits against Texas except those for which the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Texas waives immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021. The Texas Tort Claims Act (TTCA) does not waive immunity for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057. As Defendants waived any right to object to federal jurisdiction based on state sovereign immunity, the court addresses Xie's TTCA claims under Rule 12(b)(6). *See Meyers*, 454 F.3d at 504 (stating that the waiver does not limit the State's ability to rely on its own sovereign immunity law to defeat claims on the merits); *Kelley v. Papanos*, Civ. Action No. H-11-0626, 2012 WL 208446, at *4 (S.D. Tex. Jan. 24, 2012)(addressing a removed TTCA claim under Rule 12(b)(6)).

The only state tort claim asserted in Xie's amended complaint was conspiracy. He asserted in his response that "malicious prosecution, false arrest, improper search and seizure, due process, takings, negligence and conspiracy claims are not based solely on allegations that Defendants violated Section 1983 but are each separate [s]tate law claims involving injury caused by a condition or use of tangible personal property for which Defendants[] waive immunity under the Texas Tort Claims Act[]" (TTCA). (D.E. 24 at 23.)

Xie did not plead any facts to demonstrate that he suffered a personal injury resulting from a condition of tangible personal property. Specifically, Xie points to no personal property that was the instrumentality of his harm. *See Tex. Tech Univ. Health Sci. Ctr. v. Jackson*, 354 S.W.3d 879, 884 (Tex. App.—El Paso 2011, no pet.)("[M]ere involvement of tangible personal property in an injury will not, in and of itself, waive liability.").

*4.  Conclusion*

      The court recommends that the motion to dismiss (D.E. 19) be granted. The court has considered whether Xie should be allowed to amend a second time but finds no indication in Xie's First Amended Complaint or his responsive briefs that he would be able to provide specific facts that would overcome qualified immunity or correct the other pleading deficiencies.

      The parties have fourteen days from service of this report and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

      Signed at Houston, Texas, on October 7, 2020.

Peter Bray

United States Magistrate Judge